**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **SAMUEL KLINE and**<br>**LAUREN KLINE,** *on behalf of themselves and a class of similarly situated persons* | * Civil No.: 8:23-cv-00245-TDC |
| **HOWARD NORDBERG,** *on behalf of himself and a class of similarly situated persons* | * Class Action Complaint |
| **TIMOTHY PRITCHETT**, *on behalf of himself and a class of similarly situated person*<br>2245 Williams Highway<br>Grants Pass, OR 97527 | * Jury Trial Demanded |
| **IOANNIS C. TZAMOURANIS,** *on behalf of himself and a class of similarly situated persons*<br>1 Jackson Court<br>Ridgefield, CT 06877 | * |
| **CLARA K. SMITH,** *on behalf of herself and a class of similarly situated persons*<br>2522 Pebble Beach Loop<br>Lake Havasu City, AZ 86406 | * |
| **MICHAEL BOZZUTO and**<br>**ANN LYONS,** *on behalf of themselves and a class of similarly situated persons*<br>732 Santana Rd.<br>Novato, CA 94945 | * |
| *Plaintiffs* | * |
| v. | * |
| **HYUNDAI MOTOR AMERICA INCORPORATED A/K/A HYUNDAI MOTOR AMERICA** | * |
| *Defendant.* | |

---

**SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Samuel Kline and Lauren Kline, Howard Nordberg, Timothy Pritchett, Ioannis C. Tzamouranis, Clara K. Smith, and Michael Bozzuto and Ann Lyons, bring this action against Defendant Hyundai Motor America Incorporated a/k/a Hyundai Motor America ("HMA"), on behalf of themselves, and on behalf of a class and subclasses of similarly situated persons who purchased or leased Hyundai Sonata Plug-in Hybrid cars (the "car") sold or warranted by HMA and manufactured by Hyundai Motor Co. (a South Korean entity), beginning with model year 2016 up to and through at least part of 2020.

**Introduction**

1. This action arises out of false claims promulgated by HMA in the sale and marketing of the Hyundai Sonata Plug-in Hybrid. Plaintiffs' hybrid car batteries failed and HMA has failed to honor the warranty.

2. Dealer repair facilities have had continuous possession of the Klines' vehicle for over a year, of Mr. Nordberg's car for approximately four months, of Mr. Pritchett's car for over seven months, of Mr. Tzamouranis's car for three months, of Ms. Smith's car for over six months, and of the Bozzuto/Lyons car for nearly seven months as of the time of this Second Amended Class Action Complaint.

3. The case therefore also entails the failure by HMA to honor the "lifetime" warranty issued by HMA for what HMA describes as the "high-capacity 9.8 Kwh lithium-ion polymer battery" that is supposed to power the car when operating in EV (electric vehicle) mode. Upon information and belief, HMA does not honor the warranty, because it does not have the ability or available inventory to do so.

4. In Mr. Nordberg's case, he bought his car from a used car dealer (Carmax) but was still entitled to HMA's warranty protection for 100,000 miles or ten years.

5. HMA sold the Sonata Plug-in Hybrid car in model years 2016 through 2019. The car was a second-generation hybrid vehicle for Hyundai, and was the first Hyundai sedan that offered operation in "EV mode," *i.e.*, operation on battery power alone. EV mode is the default mode for the car. EV mode is able to handle speeds up to 75 mph, and is the recommended mode for city driving.

6 When HMA introduced the Sonata Plug-in Hybrid in the 2016 model year, it limited the distribution of the cars at that time to dealers in the following states:

California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, and Oregon.

7. Although Hyundai stated at the time it introduced the 2016 model that buyers in other states could possibly order the car for delivery to those other states, Hyundai did not encourage it, partly because of the need for dealer training and support, and because of other infrastructure issues that would require implementation. Hyundai has never fully rolled-out the necessary infrastructure, however, in those states where it authorized dealer sales of the car.

8. Hyundai dealers in other states were occasionally able to work exchanges with dealers in authorized states, as in Ms. Smith's case, and sell the cars to customers with all the standard warranties, including the lifetime battery warranty.

9. Hyundai Motor Co. discontinued the Sonata Plug-in Hybrid beginning in the 2020 model year. With the discontinuation of that product, Hyundai Motor Co. and HMA have also essentially abandoned all those customers who purchased Sonata Plug-in Hybrids, including Plaintiffs the Class members as the Class is defined herein.

10. Upon information and belief, based on explanations provided to Mr. Nordberg by Hyundai representatives, the manufacturer of the battery used in Hyundai Sonata Plug-in Hybrids has stopped production of that battery.

**The Parties**

11. Plaintiffs Samuel and Lauren Kline are husband and wife, and are residents of Potomac, Maryland.

12. Plaintiff Howard Nordberg is a resident of California.

13. Plaintiff Timothy Pritchett is a resident of Oregon

14. Plaintiff Ioannis C. Tzamouranis is a resident of Connecticut.

15. Plaintiff Clara K. Smith is a resident of Arizona.

16. Plaintiffs Bozzuto and Lyons are residents of California.

17. The Klines, Mr. Nordberg, Mr. Pritchett, Mr. Tzamouranis, Ms Smith, and Mr. Bozzuto and Ms. Lyons all purchased or leased their Hyundai Sonata Plug-in Hybrids for personal or family use.

18. Defendant HMA is a corporation that was formed in and maintains its corporate headquarters in California. HMA is a wholly owned subsidiary of Hyundai Motor Company, a manufacturer of cars, commercial vehicles, engines, and automotive parts and equipment, based in Seoul, South Korea. HMA serves as Hyundai Motor Company's distributor in the United States.

19. HMA issued and is responsible for all warranties issued to the Plaintiffs and the putative class.

20. HMA is the Hyundai corporate entity that contracts with dealers in the US, thereby authorizing the dealers to sell and service Hyundai cars.

21. HMA authorized, created, and is responsible for all marketing, advertising, and representations made with respect to the cars that are the subject of this Complaint.

**Facts Giving Rise to the Second Amended Complaint**

22. The Sonata Plug-in Hybrid was first sold by HMA in the 2016 model year. The car was different from previous Sonata hybrids, in that the lithium-ion battery was designed to run the car independent of the gas-powered system, for up to approximately 27 miles.

23. Lithium-ion batteries are commonly used to power hybrid and plug-in hybrid cars because they theoretically offer high power and long life.

24. In this case, HMA represented to the public that the Sonata Plug-in Hybrid could be operated up to 27 miles in EV mode.

25. In addition, the Sonata Plug-in Hybrid's battery operation feature enabled an overall driving range of 600 miles, with significant fuel economy. The total average for the car was 99 miles per gallon. The car offered 39 miles per gallon when operated only in traditional hybrid mode.

26. HMA devoted significant marketing efforts to promotion of the driving range in both EV and in combined operation modes. HMA's advertising campaign professed the appeal of its cars to consumers who suffered from "range anxiety."

27. For many purchasers of the car, however, battery trouble first became noticeable as the battery powered range of the car declined over time.

28. HMA's website stated that the "Sonata Plug-in Hybrid transforms your driving experience with a highly-efficient performance in EV mode for your daily commute or HEV mode to simply relax and enjoy a long-distance drive on weekends."

29. The website also promised: "With a high-capacity 9.8 kwh lithium-ion polymer battery, there's still enough power in EV mode during buffering to take you beyond a 40 km drive with a

thrill…. Sonata Plug-in Hybrid offers a customized level of comfort and convenience in every situation."

30. Part of that promised, customized level of convenience and comfort was the ability to switch the car to "battery charge mode," which used engine power to run a traction motor as a generator to recharge the battery pack relatively quickly and conveniently.

31. As further inducement to its customers, HMA offered a lifetime warranty on the lithium-ion batteries in its Sonata Plug-in Hybrid cars. The written warranty HMA provided to purchasers, including the named Plaintiffs who purchased or leased new cars, and all Class members who purchased or leased new cars, states:

> WHAT IS COVERED
> Repair or replacement of HYBRID SYSTEM components listed below, originally manufactured or installed by Hyundai Motor Company, Hyundai Motor Group, … or Hyundai Motor America (HMA) that are found to be defective in material or factory workmanship under normal use and maintenance…. Repairs will be made using new Hyundai Genuine Parts or Hyundai authorized remanufactured parts.
>
> WARRANTY PERIOD
> The Warranty period for the following HYBRID SYSTEM components is limited to 10 years from the date of original retail delivery or date of first use, or 100,000 miles, whichever occurs first.
>
> HYUNDAI LIFETIME HYBRID BATTERY WARRANTY- Original Owner Only. The Original Owner is defined as the first retail purchaser of the vehicle who took delivery of the vehicle on its date of first use. The warranty for the Hybrid Battery will remain in effect throughout the ownership period for the original owner….
> Note: For California Emissions Vehicles certified as a partial zero-emissions vehicles, (PZEV) (excluding Delaware, Pennsylvania and Washington), the Plug-in Hybrid Battery is covered for 10 years from the date of original retail delivery or date of first use, or 150,000 miles, whichever occurs first.

32. The warranty also provides:

> Warranty service will be provided by any authorized Hyundai dealership.

33. For the dealership, warranty work entails the following consideration set forth in the Dealer Sales and Service Agreement (SSA) between HMA and its authorized dealers:

> DEALER recognizes that its Customers are entitled to prompt, courteous and professional service and that Customer satisfaction is vital to the mutual success of DEALER and HMA. DEALER agrees, therefore: to take all reasonable steps to provide service and parts for all Hyundai Motor Vehicles, regardless of where purchased, and whether or not under warranty; to ensure that necessary repairs on Customer vehicles are accurately diagnosed and performed in accordance with the highest professional standards; to advise the Customer and obtain his or her consent prior to the initiation of any repairs; and, to treat the Customer courteously and fairly at all times.

34. As part of its obligations under the SSA, and in furtherance of the provision quoted above authorized Hyundai dealers also agree that:

> DEALER will stock a sufficient quantity and variety of parts and accessories to meet Customer demand and to perform warranty repairs and special policy work. DEALER recognizes, however, that its Customers may reasonably expect that DEALER will have Hyundai Genuine Parts or Accessories immediately available for purchase or installation. DEALER, therefore, agrees to carry in stock at all times during the term of this Agreement a complete inventory of Hyundai Genuine Parts or Accessories, as listed in HMA's current inventory guide, to enable DEALER to meet its Customers' needs and to fulfill its service responsibilities under this Agreement. HMA reserves the right to audit DEALER's inventory from time to time and may require DEALER to supplement its inventory to meet its obligations hereunder.

35. All Named Plaintiffs purchased their cars from licensed HMA dealers, except Mr. Nordberg. Licensed HMA dealers purchase cars from HMA, and sell them to the public on terms established by HMA in a standard SSA.

36.. The SSA promulgated by HMA states among other things that: “DEALER recognizes that its Customers have a right to expect that any product that they purchase from DEALER meets the high quality standards associated with HMA, FACTORY, the Hyundai Marks and Hyundai Products in general.”

37. The SSA also provides: “HMA and DEALER recognize that certain Hyundai Products may be in short supply from time to time because of factors which are beyond the control of HMA or FACTORY. Where such a shortage is determined by HMA to exist, HMA will endeavor to allocate the affected Hyundai Product(s) among its dealers in a fair and equitable manner, as it may determine in its sole discretion.”

38. As set forth herein, HMA is unwilling or unable to honor its commitment to allocate new batteries to licensed dealers for its 2016-2019 Sonata Plug-in Hybrid cars.

## **The Named Plaintiffs**

Samuel and Lauren Kline

39. In December 2016, Plaintiffs Samuel and Lauren Kline purchased a new 2017 Hyundai Sonata Plug-in Hybrid car (VIN KMHE14L20HA049501) from Fitzgerald Hyundai, a licensed Maryland car dealer and authorized Hyundai dealer located in Rockville, Maryland.

40. The Klines paid the bulk of the purchase price, including taxes and tags, in the total amount of $37,364.51, in cash. From that cash price, Fitzgerald deducted $3,500 in rebates from HMA, and credited $1,500 for the Klines’ trade-in of a 2005 Honda 4 door sedan, a hybrid, which had 86,401 miles on the odometer. The Klines’ total cash outlay for the new Sonata Plug-in Hybrid car was therefore $32,364.51.

41. The Kline’s car battery failed in December 2021. They brought the car to Fitzgerald Hyundai for service at that time, under the terms of the warranty issued by HMA. Fitzgerald has had continuous possession of the car since that time (more than 16 months) and since December 2021 has promised to acquire, but failed to acquire or install a replacement battery.

42. The Klines specifically purchased their Sonata Plug-in Hybrid because they wanted a car that could be operated for short distances on battery power alone (called “EV mode”). That is a

principal purpose of this Plug-in Hybrid, and a point emphasized by HMA in its marketing of the car. In addition, the car is supposed be both environmentally friendly and to get great gas mileage.

43. The car has failed in these essential purposes, and HMA has failed to address the problem pursuant to the terms of its warranty.

44. In the course of their dealings with Fitzgerald Hyundai and HMA with regard to the battery in their Sonata Plug-in Hybrid, the Klines have not benefitted from the warranty provisions. It has become evident, instead, that Hyundai is unwilling or unable to supply the parts, including the battery, necessary to honor the warranty.

45. The Klines drove their 2017 Sonata Plug-in Hybrid for only about 4 years, during which time they put only about 48,000 miles on it. When the battery failed in December 2021, they brought it to Fitzgerald for warranty repairs. Fitzgerald has held the car continuously in its repair shop since then - for more than a year as of the date of this Complaint. No replacement battery has been provided. A new battery has been promised on several occasions, but there are apparently no new batteries available.

46. The Klines have asked Fitzgerald to buy the car back from them, but Fitzgerald has refused, as the car is inoperable. Hyundai has proposed buy-backs which undervalue the car, presumably because Hyundai cannot in good faith re-sell it to anyone.

47. As a result of not having their own car for more than a year, the Klines have suffered considerable inconvenience and incurred significant expense, including charges for gas at prices that have, at times during the year, been higher than they had paid in many years. Their cash investment of over $32,000 (plus trade-in allowance of an additional $1,500) has been rendered

valueless, and to purchase a replacement vehicle at this time is difficult and much more costly, even if an acceptable hybrid or electric car could be found.

48. The Klines would not have purchased the 2017 Hyundai Plug-in Hybrid had they known that the battery would fail prematurely, and that HMA would not honor the warranty. The warranty was an essential factor in the Klines' decision to purchase the car.

Howard Nordberg

49. In August, 2019, Plaintiff Howard Nordberg purchased a used 2016 Hyundia Sonata Plug-in Hybrid car (VIN KMHE54L2GA031534) from a Carmax dealer in Roseville, California at a total cost of $24,507.94.

50. Information provided by Carmax at the time of the purchase indicated that the car had had one prior owner, and that it had no history of previous accidents, insurance claims, or damage. Carmax also certified that it had inspected the electrical system and battery, and that these systems conformed to applicable standards.

51. At the time of the purchase, the car had only 16,044 miles on the odometer. Because of the low mileage, Mr. Nordberg's car battery was still covered by the HMA warranty, which explicitly afforded full warranty protection to subsequent purchasers for up to 100,000 miles or 10 years.

52. In late 2022, Mr. Nordberg's car began experiencing mechanical/electrical problems. In December, 2022, the car lost all power, and Mr. Nordberg had it towed to a Hyundai dealer (Roseville Hyundai, located in Roseville, California).

53. When the car arrived at the dealership, a service representative informed Mr. Nordberg that it would take several days to diagnose the issue. In the meantime, the dealer would not provide a loaner car. Diagnostics required an initial deposit of $200, which Mr. Nordberg paid.

54. Mr. Nordberg eventually rented a replacement car, and sought reimbursement of his rental expenses from HMA.

55. After diagnostics were performed on the car, Mr. Nordberg was informed by the dealership that the battery would need to be replaced, and that it would be approximately three months before the part could be acquired.

56. Mr. Nordberg specifically purchased the Hyundai Sonata Plug-in Hybrid because its battery-operated capabilities were both environmentally friendly, and because it would be more economical to drive, especially when operated over short distances in full battery mode.

57. Mr. Nordberg also purchased the car in reliance upon the HMA battery warranty which was extended to him as a subsequent purchaser. He relied on HMA's representation of warranty coverage for the battery, and would not have purchased the car without the warranty.

58. HMA's representation to subsequent purchasers included the following statement:

> We are committed to giving you the confidence and peace of mind that comes with knowing your Hyundai is built with the highest quality and care. That is why we cover our batteries and system components for your hybrid, plug-in hybrid, and all electric vehicles with a 10-year/100,000-mile warranty. While all electric-car batteries will experience degradation over time, ours will not degrade more than 70 percent of the original capacity during the warrant period.

59. HMA also represented that it offered "America's Best Warranty" to protect owners against battery failure.

60. When the battery failed in Mr. Nordberg's car, the car had less than 39,000 miles on the odometer, meaning that he averaged less than 7,000 miles of driving the car per year.

61. Although he was originally told that his car repair/battery replacement might be scheduled for March 2023, Mr. Nordberg was also informed by a Hyundai representative – similarly to the Klines – that the repair might take much longer and that the wait for the battery could be indefinite. Mr. Nordberg was also informed by a Hyundai representative that the

battery manufacture had stopped producing the model battery that the Sonata Plug-in Hybrid model required.

62. As a result of not having his own car for more than six months, Mr. Nordberg has suffered considerable inconvenience and incurred significant expense, including charges for gas at prices that have, at times during the year, been higher than he had paid in many years. His cash investment in the car has been rendered valueless, and to purchase a replacement vehicle at this time is difficult and much more costly, even if an acceptable hybrid or electric car could be found.

Timothy Pritchett

63. In February 2018, Plaintiff Timothy Pritchett entered into a 36-month lease for his 2017 Hyundai Sonata Plug-in Hyrbrid bearing VIN KMHE14L27HA061046. At the end of the lease term, he purchased the car.

64. Mr. Pritchett would not have leased or subsequently purchased the car but for the lifetime battery warranty.

65. In April 2022, Mr. Pritchett took his car to the dealer because he was seeing error codes on his dashboard screen. The dealer confirmed the error codes and attempted unsuccessfully to resolve them.

66. Soon after the attempted repair, the dealer informed Mr. Pritchett that the battery needed to be replaced, and stated that it would be replaced under the terms of the lifetime warranty. These statements proved false.

67. Instead of replacing the battery, HMA informed Mr. Pritchett that they would replace only the battery computer module.

68. The battery computer module was not available for five months - until September 2022. After it was installed, however, problems with the car persisted. Mr. Pritchett was then informed by the dealer that a new battery was needed, and that it had been ordered.

69. From April to Ocotober 2022, Mr. Pritchett could not operate the car without safety concerns and a dashboard of error messages and warning lights. During this period, however, the dealer and HMA were unable to provide any clarification as to what could be done to make the car fully operable, or when a new battery would be installed.

70. Mr. Pritchett's car is no longer drivable, and it has been at the dealership since October 2022. As of the end of March 2023, no one from the dealership or HMA has been able to tell him when a new battery will be available.

71. As a result of not having his own car for more than six months, Mr. Pritchett has suffered considerable inconvenience and incurred significant expense, including charges for gas at prices that have, at times during the year, been higher than he had paid in many years. His cash investment in the car has been rendered valueless, and to purchase a replacement vehicle at this time is difficult and much more costly, even if an acceptable hybrid or electric car could be found.

<u>Ioannis C. Tzamouranis</u>

72. Mr. Tzamouranis purchased his 2017 Hyundai Sonata Plug-in Hybrid car bearing VIN KMHE14L29HA045088 in November 2016 for a total price of $36,259.

73. Mr. Tzamouranis would not have purchased the car but for the lifetime battery warranty.

74. Mr. Tzamouranis noticed in late 2022, when the car had about 50,000 miles on the odometer, that he was getting diminishing range in battery-operation mode.

75. In January 2023, Mr. Tzamouranis saw his engine warning lights illuminated, experienced the vehicle actively braking, and was increasingly concerned about the lower mileage range. He brought the car to the dealer who performed a multi-point inspection and determined that the battery needed to be replaced.

76. Mr. Tzamouranis left the car with the dealer in January 2023, and it has remained there since that time. Neither the dealer nor HMA have been able to tell him when the battery will be replaced.

77. As a result of not having his own car for more than three months, Mr. Tzamouranis has suffered considerable inconvenience and incurred significant expense, including charges for gas at prices that have, at times during the year, been higher than he had paid in many years. His cash investment in the car has been rendered valueless, and to purchase a replacement vehicle at this time is difficult and much more costly, even if an acceptable hybrid or electric car could be found.

Clara K. Smith

78. Clara K. Smith purchased a new 2016 Sonata Plug-in Hybrid from an HMA dealer, Swanty Hyundai in Kingman, Arizona in April 2016.

79. Ms. Smith first saw the car model at an auto show. She was uncertain about buying a plug-in electric vehicle at the time, but she was willing to buy the Sonata Plug-in Hybrid because of the lifetime battery warranty issued by HMA.

80. Swanty Hyundai was able to locate a new 2016 Sonata Plug-in Hybrid at a California dealership, acquire it, and sell it to Ms. Smith.

81. In late 2022, Ms. Smith drove the car to Illinois, where it died due to battery failure. The car had less than 20,000 miles on it at the time it became inoperable.

82. A dealer in Algonquin Illinois (Rosen Hyundai) diagnosed the problem and informed Ms. Smith that the battery needed to be replaced.

83. That diagnosis was in November 2022. Rosen Hyundai has held the car for repairs continually since that time. HMA has made only vague promises as to when or if the car will be repaired.

84. As a result of not having her own car for more than six months, Ms, Smith has suffered considerable inconvenience and incurred significant expense, including charges for gas at prices that have, at times during the year, been higher than she had paid in many years. Her cash investment in the car has been rendered valueless, and to purchase a replacement vehicle at this time is difficult and much more costly, even if an acceptable hybrid or electric car could be found.

<u>Michael Bozzuto and Ann Lyons</u>

85. Michael Bozzuto and Ann Lyons bought a new, 2017 Sonata Plug-in Hybrid car from Hyundai of Petaluma (California) in May 2017 (VIN KMHE54L28HA064526). Their cash price totaled $46,239.78.

86. Mr. Bozzuto and Ms. Lyons would not have purchased the car but for the lifetime battery warranty.

87. In August 2022, when the car had about 135,000 miles on the odometer, Mr. Bozzuto noticed delays in engine acceleration, as well as a clunking noise. He brought the car to a Hyundai dealer, but they reported that they could not replicate the problem, and noted that the car seemed to be performing according to specifications.

88. On September 27, 2022, the car froze at a traffic light. It was towed to Hanlees Hilltop Hyundai where it has remained for nearly seven months.

89. The dealer has indicated that the car needs a new battery. A battery has been promised on several occasions, most recently on April 7, 2023. On April 14, 2023, however, the dealer informed Mr. Bozzuto that no battery was available.

90. As a result of not having their own car for more than six months, Mr. Bozzuto and Ms. Lyon have suffered considerable inconvenience and incurred significant expense, including charges for gas at prices that have, at times during the year, been higher than she had paid in many years. Their cash investment in the car has been rendered valueless, and to purchase a replacement vehicle at this time is difficult and much more costly, even if an acceptable hybrid or electric car could be found.

## **Jurisdiction**

91. This Court has diversity jurisdiction in this matter under 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000 and because HMA and many putative class members are citizens of different states.

92. This Court has personal jurisdiction over HMA because it conducted, and continues to conduct substantial business in Maryland, and because its breach of the warranty at issue occurred in Maryland.

## **Class Action Allegations**

93. Plaintiffs bring this action for themselves, and on behalf of a class of similarly situated persons (the "Class"), as follows:

> All persons who purchased or leased new 2016-2019 Hyundai Sonata Plug-in Hybrid Sonata cars from Hyundai authorized dealers in California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, and Oregon, or who purchased used Hyundai Sonata Plug-in Hybrid cars which qualified for HMA's battery warranty coverage.

94. Excluded from the Class are HMA, its affiliates, employees, officers, and directors, and persons or entities who purchased Hyundai Sonata Plug-in Hybrid cars for resale.

95. Upon information and belief, the Class is so numerous that joinder of all members is impracticable. HMA dealers sold approximately 9,000 new Hyundai Sonata Plug-in Hybrid cars in the states listed in the Class definition from 2016 into 2020, and a significant number of those vehicles were re-sold to subsequent purchasers with the battery warranty remaining in place for up to 10 years or 100,000 miles. Indeed, Plaintiffs are informed that some dealers have 10 or more Sonata Plug-in Hybrid cars in the repair shops waiting for new batteries that HMA is unable to supply.

96. Common questions of law and fact exist as to all members of the Class, and these questions predominate over any individual questions that may arise. Common questions include the terms of and the breach by HMA of the standard "lifetime" warranty issued by or made applicable by HMA to all Class members for batteries in the 2016-2020 model years for the Sonata Plug-in Hybrid; the failure of the battery to conform to the terms of all implied warranties; the liability of HMA for damages pursuant to the express warranty provisions and controlling law embodied in the Uniform Commercial Code provisions as enacted in all states where HMA sold the car and marketed the warranty; the consistent failure by HMA to honor the warranty it issued to Class members, and its failure to acquire and deliver replacement batteries to dealers so that warranty repairs can be performed; the total loss of value for all Hyundai Sonata Plug-in Hybrids, which are now inoperable, or will become inoperable as batteries in the cars continue to fail.

97. Plaintiffs' claims are typical of class members' claims because plaintiffs were issued the same warranty as all class members, purchased the identical car with the same Plug-in Hybrid

battery system, and allege the same claims that all Class members would allege with respect to the failure of that battery and HMA's inability or unwillingness to honor the warranty.

98. Plaintiffs are adequate representatives of the Class because they have no conflicts of interest, are willing to prosecute the matter vigorously in the interests of the Class, and have retained counsel who are experienced in representing consumers in complex class action litigation.

99. A class action is a superior method for adjudication of the Class's claims against HMA, because the burdens and expense of individual litigation in this area of the law are significant, particularly when the lawsuit is brought by individuals against a large multi-billion dollar corporation. Individual litigation would also pose a significant burden to the courts. The case presents no special management or ascertainability issues, as all class members can be readily identified through the records of HMA and its dealers.

100. HMA has also acted, or refused to act, on grounds generally applicable to the Class as a whole, making final equitable or declaratory relief appropriate.

## Causes of Action

## Count I – Breach of Contract

101. Plaintiffs incorporate the previous paragraphs 1-100 as if fully set forth.

102. Plaintiffs bring this claim individually and on behalf of all members of the Class described herein.

103. Plaintiffs and all Class members are parties to a warranty issued by HMA that covers battery systems in the Sonata Plug-in Hybrid cars for the life of the vehicle while they own it or, in the case of subsequent purchasers, for 10 years or 100,000 miles.

104. When the batteries failed in Plaintiffs' cars, they brought the car to Hyundai dealers where they were assured that they would be repaired. The cars have been in the possession of the dealers for extended periods of time, exceeding at least 4 months and in some cases over a year as of the date of this Second Amended Complaint.

105. Despite multiple promises that the batteries would be replaced at no cost to the named Plaintiffs and Class members, HMA's dealers haves been unable to secure the necessary parts from HMA, and the batteries have not been replaced pursuant to the terms of the underlying contractual agreements.

106. Upon information and belief, the lack of available replacement batteries is a direct result of the deliberate decision by HMA and Hyundai Motor Co. to discontinue the Hyundai Sonata Plug-in Hybrid as of the 2020 model year. Plaintiffs and the Class have therefore become victims of a failed experimental EV program by Hyundai.

107 HMA is unable or unwilling (or both) to honor the terms of its warranty as to the Plaintiffs, and upon information and belief, as to other Class members whose batteries have failed.

WHEREFORE, Plaintiffs seek judgment for themselves and for the Class against HMA in an amount in excess of Five Million Dollars, plus such other and further relief as this Court may deem appropriate.

## Count II – Breach of Express Warranty

108. Plaintiffs incorporate the previous paragraphs 1-100 as if fully set forth.

109. Plaintiffs bring this claim individually and on behalf of all members of the Class described herein.

110. HMA was at all times a merchant with respect to the Class members' Sonata Plug-in Hybrid cars.

111. Pursuant to the terms of the Uniform Commercial Code as adopted in each of the 8 states (and in Arizona, as to Ms. Smith) where HMA marketed and sold the Sonata Plug-in Hybrid from 2016 to 2020, (*i.e.*, as to the named Plaintiffs: Md. Com. Law Code § 2-313; Cal. Com. Code § 2313; Conn Gen. Stat.§ 42a-2-313; Az. Rev. Stat. § 47-2313; Or. Rev. Stat. § 72.3130) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty.

112. HMA made such affirmation or promise in the form described above pursuant to which HMA agreed to replace batteries free of charge for a "lifetime" with respect to original purchasers, and for up to 10 years or 100,000 miles for subsequent purchasers.

113. This express written warranty by HMA constituted a basis of the bargain that was reached each time Plaintiffs and Class members purchased a Sonata Plug-in Hybrid.

114. HMA has breached the express warranty by its failure to make replacement batteries available to its dealers and to consumers, such that dealers are holding the cars in their repairs shops for many months and, in some cases, over a year, with no ability to perform necessary replacements.

115. Further, HMA has failed both to repair or replace failed and defective batteries, but has communicated to Class members, directly and through its dealers, that it does not know when or if the batteries will be repaired, thus rendering the satisfaction of any notice requirement futile.

116. The express warranty by which HMA is obligated to replace failed and defective batteries has failed in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and Class members whole.

117. HMA has failed to provide promised remedies within a reasonable time, and has consistently been unable even to provide a schedule for doing so, although disabled cars have been sitting in dealership repair facilities for months or longer.

WHEREFORE, Plaintiffs seek judgment for themselves and for the Class against HMA in an amount in excess of Five Million Dollars, plus such other and further relief as this Court may deem appropriate.

**Count III - Breach of Implied Warranty**

118. Plaintiffs incorporate the previous paragraphs 1-100 as if fully set forth.

119. Plaintiffs bring this claim individually and on behalf of all members of the Class described herein.

120. In or about December 2016, the Klines purchased a new Hyundai Sonata Plug-in Hybrid car from an authorized Hyundai dealer in Montgomery County, Maryland.

121. In or about August 2019, Mr. Nordberg purchased a used Hyundai Sonata Plug-in Hybrid car from a Carmax dealership in Roseville, California. The car had only 16,044 miles on the odometer, had just one previous owner, and had never been involved in an accident or an insurance claim. As such it was still subject to and Mr. Nordberg's purchase was protected by the HMA battery warranty.

122. In or about February 2018, Mr. Pritchett leased his new Hyundai Sonata Plug-in Hybrid from a dealer in Oregon. He later purchased the car at the conclusion of the lease term.

123. In or about November 2016, Mr. Tzamouranis purchased his new Hyundai Sonata Plug-in Hybrid from a dealer in Connecticut.

124, In or about April 2016, Ms. Smith purchased her new 2016 Hyundai Sonata Plug-in Hybrid from a dealer in Arizona, who secured the car for her in an exchange deal with a dealer in California.

125. In or about April 2017, Mr. Bozzuto and Ms. Lyons bought a new Hyundai Sonata Plug-in Hybrid from a dealer in California.

126. Defendant HMA, as a wholly owned subsidiary of the manufacturer, Hyundai Motor Co., a South Korean corporation, acted as Hyundai Motor Co.'s designated agent for purposes of the sale, marketing, and warranting of the car.

127. At the time of the sales to the named plaintiffs and to all Class members, and at all times when HMA sold Hyundai Sonata Plug-in Hybrid cars in the US, HMA impliedly warranted to the Klines, Mr. Nordberg, Mr. Pritchett, Mr. Tzamouranis, Ms. Smith, and to Mr. Bozzuto and Ms. Lyons, and to all class members described above, that the Hyundai Sonata Plug-in Hybrid was merchantable and fit for the ordinary purposes for which battery-powered hybrid cars are intended, namely for the purchaser to drive a car that is operable at times on battery power alone, and that gets excellent gas mileage when operations utilizing gasoline power are taken into account.

128. HMA also represented that the battery would not excessively degrade over the life of the warranty period.

129. At the time of the sales at issue, and at all times when HMA sold Hyundai Sonata Plug-in Hybrid cars in the US, Hyundai also impliedly warranted to the Klines, to Mr. Nordberg, Mr. Pritchett, Mr. Tzamouranis, Ms. Smith, and to Mr. Bozzuto and Ms. Lyons, and to all Class members described above that the car was fit for the particular and unique purpose of a hybrid vehicle which can be operated for up to 27 miles without gasoline power.

130. In its sales and marketing of the Hyundai Sonata Plug-in Hybrid, HMA held itself out to the Klines, Mr.Norberg, Mr. Pritchett, Mr. Tzamouranis, Ms. Smith, and to Mr. Bozzuto and Ms. Lyons, and to the public as possessing superior knowledge and skill in the production of hybrid vehicles. It made its implied warranties of merchantability under Uniform Commercial Code provision applicable to all Class members, and in particular as to the Named Plaintiffs, under the following state law provisions: Md. Com. Law Code § 2-314; Cal. Com. Code § 2314; Conn. Gen. Stat. § 42a-2-214; Oreg. Stat. § 72.3140; Az. Rev. Stat. § 47-2314. The warranty of merchantability includes the implied warranty that all of HMA's claims in the marketing and advertising of the cars, and of the warranty itself, were true.

131. The Sonata Plug-in Hybrid car does not comply with the implied warranty of merchantability.

132. The batteries in the Hyundai Sonata Plug-in Hybrid cars sold by HMA in the US have failed, or will fail. HMA anticipated such failure by offering lifetime warranties on the battery, and extending that warranty for 10 years or 100,000 miles for subsequent purchasers, so that the car could continue to be used for its intended purposes. HMA, however, is unwilling or unable to honor the warranty, making the Plaintiffs' cars inoperable and unmarketable.

133. Further, HMA has failed both to repair or replace failed and defective batteries, but has communicated to Class members, directly and through its dealers, that it does not know when or if the batteries will be repaired, thus rendering the satisfaction of any notice requirement futile.

134. HMA's breach of its implied warranties to the Plaintiffs and to all Class members is the proximate cause of significant economic loss to them.

WHEREFORE, Plaintiffs seek judgment for themselves and for the Class against HMA in an amount in excess of Five Million Dollars, plus such other and further relief as this Court may deem appropriate.

**Count IV – Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.**

135. Plaintiffs incorporate the previous paragraphs 1-100 as if fully set forth.

136. Plaintiffs bring this claim individually and on behalf of all members of the Class described herein.

137. Plaintiffs are all "consumers" as that term is used in the Magnuson-Moss Warranty Act.

138. HMA is a "supplier" and a "warrantor" within the meaning of the Magnuson-Moss Warranty Act.

139. Hyundai Sonata Plug-in Hybrid cars are "consumer products" under the Magnuson-Moss Warranty Act.

140. The amount in controversy in this matter exceeds $50,000.

141. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

142. In its express written warranties, HMA promised full battery replacement for the life of the vehicle's ownership by original purchasers, and for 100,000 miles or 10 years for subsequent purchasers.

143. This promise by HMA is a written warranty within the meaning of the Magnuson-Moss Warranty Act.

144. The implied warranties described above are also recognized and enforceable pursuant to the terms of the Magnuson-Moss Warranty Act.

145. For the named Plaintiffs, and for all Class members, the written lifetime battery warranty, or the written 100,000 mile/10-year warranty, as well as the implied warranties described above, became the basis of the bargain when they purchased their Hyundai Sonata Plug-in Hybrid cars.

146. HMA has breached the express warranty by its failure to make repairs, specifically the required battery replacement, in cars purchased by the named Plaintiffs and by the Class.

147. HMA breached the implied warranties by virtue of the failure of batteries prematurely, even at relatively low mileage levels, making the cars unmerchantable and unusable for the vehicles' intended purpose.

148. Plaintiffs, for themselves and for the Class herein, seek all remedies and damages available to them by law, including diminution in the value of the cars, in an amount to be proven at trial.

WHEREFORE, Plaintiffs seek judgment for themselves and for the Class against HMA in an amount in excess of Five Million Dollars, plus their reasonable attorneys' fees and costs incurred in this matter, plus such other and further relief as this Court may deem appropriate.

**Count V – Declaratory Judgment – 28 U.S.C. § 2201**

149. Plaintiffs incorporate the previous paragraphs 1-100 as if fully set forth.

150. Plaintiffs bring this claim individually and on behalf of all members of the Class described herein.

151. Plaintiffs and all class members purchased Hyundai Sonata Plug-in Hybrid cars sold by authorized dealers of HMA, and subject to the express lifetime battery warranty issued by HMA, or purchased as "subsequent purchasers" to whom the battery warranty was extended for 10 years or 100,000 miles.

152. The warranty states, in pertinent part:

> WARRANTY PERIOD
> The Warranty period for the following HYBRID SYSTEM components is limited to 10 years from the date of original retail delivery or date of first use, or 100,000 miles, whichever occurs first.
>
> HYUNDAI LIFETIME HYBRID BATTERY WARRANTY- Original Owner Only. The Original Owner is defined as the first retail purchaser of the vehicle who took delivery of the vehicle on its date of first use. The warranty for the Hybrid Battery will remain in effect throughout the ownership period for the original owner….

153. The warranty is administered and performed by authorized HMA dealers, whose contracts with HMA call for the dealer to offer prompt service, and call for HMA to allocate sufficient resources to the dealers in order to be able to perform the warranty work.

154. Replacement batteries for failed batteries that are protected by the he lifetime warranty do not exist. Dealers are unable to replace the batteries, and consumer purchasers are left with vehicles that are inoperable and unmarketable.

155..An actual case or controversy exists as to Plaintiffs and the class members on the one hand, and HMA on the other, in that HMA has been either unwilling or unable to honor the warranty or to supply the necessary parts to its authorized dealers for those purchasers whose batteries have failed.

156. Moreover, upon information and belief, the problem will continue to get worse as more Hyundai Sonata Plug-in Hybrids are driven more miles by original and subsequent purchasers, all of whom are Class members herein, and more batteries fail.

157. HMA’s inability or unwillingness to honor the lifetime battery at present, and going forward, is or will be the cause of great economic harm to the Plaintiffs and to the Class.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class identified herein, asks this Court to declare their right to prompt replacement of batteries that have failed and will fail in Hyundai Sonata Plug-in Hybrids sold in the US during the relevant time period, and failing that,

to an award of damages adequate to compensate them for the loss of use of the cars, the loss of market value for the cars, the replacement value of the cars, and fuel costs incurred that would not have been incurred had the batteries been replaced in a timely fashion in accordance with the requirements of the warranty and HMA's contracts with its authorized dealers.

**Count VI – Fraud**

158. Plaintiffs incorporate the previous paragraphs 1-100 as if fully set forth.

159. Plaintiffs bring this claim individually and on behalf of all members of the Class described herein.

160. In the marketing and sale of the Hyundai Sonata Plug-in Hybrid, HMA made certain representations to consumers about its prospective performance, range, durability, and fully warranted battery, including the representations that the hybrid car could be operated in battery-only mode, that the mileage when operated in gas-powered mode was exceptional, that the battery-only range was up to 27 miles, that hybrid components were warranted for 10 years, and that the hybrid's battery was warranted for the lifetime of the vehicle, and for 10 years or 100,000 miles for subsequent purchasers.

161. Within four years of making these representations, HMA stopped marketing and selling the Sonata Plug-in Hybrid, and abandoned consumers whose hybrid components and batteries had failed.

162. HMA knew at the time that it marketed and sold the Sonata Plug-in Hybrid cars that the program was experimental, that it did not have infrastructure in place needed to honor the lifetime battery warranty, and that representations about the projected life of the battery were unproven and cannot have been made in good faith.

163. As a result of the new business plan implemented by HMA by which is stopped production of the Sonata Plug-in Hybrid, and did so without adequate assurances that it could continue to acquire batteries needed in order to honor its warranties, shortly after its extensive marketing campaign and explicit warranties issued to consumers, all of HMA's representations were rendered false.

164. In purchasing this specific model with its highly-touted hybrid capabilities and warranties, Plaintiffs and the Class members reasonably relied on the representations made by HMA as described herein.

165. As a result of that reliance, Plaintiffs and the Class members have been left with cars that are either inoperable now, or soon will be, and with cars that have lost virtually all market value.

166. HMA made public representations about the battery, the battery operation capabilities, and the warranty for the Sonata Plug-in Hybrid with the express purpose of increasing sales in the specialized plug-in hybrid market. It made these representations with reckless disregard for their truth.

167. Representations regarding the warranty were particularly reckless, because even in the limited geographic areas where HMA sold the car, HMA never had in place the necessary infrastructure to honor the warranty. The promises regarding lifetime warranty protection were therefore illusory and deliberately deceitful.

168. Since battery failures have been more common, some consumers, like the Klines, have been subjected to very low offers to buy back the cars which offers, if accepted, would exacerbate the significant economic loss suffered by them in terms of both loss of past investment, and the future costs of finding and paying for adequate replacement vehicles.

WHEREFORE, Plaintiffs seek judgment for themselves and for the Class against HMA in an amount in excess of Five Million Dollars, punitive damages in an amount to be determined by the trier of fact, plus such other and further relief as this Court may deem appropriate.

**Count VII – Consumer Products Guaranty Act**

169. Plaintiffs incorporate the previous paragraphs 1-100 as if fully set forth.

170. This Count VII is brought on behalf of a subclass of consumers from the class defined above, who purchased their Hyundai Sonata Plug-in Hybrid cars in Maryland.

171. Plaintiffs and the class members are consumers, and the warranties issued by HMA are considered "guaranties" as used in Md. Comm. Law Code § 14-401.

172. When Plaintiffs and the Maryland subclass purchased their Hyundai Sonata Plug-in Hybrid cars from HMA authorized dealers in Maryland, they were furnished with warranties that provided, in pertinent part:

> WARRANTY PERIOD
> The Warranty period for the following HYBRID SYSTEM components is limited to 10 years from the date of original retail delivery or date of first use, or 100,000 miles, whichever occurs first.
>
> HYUNDAI LIFETIME HYBRID BATTERY WARRANTY- Original Owner Only. The Original Owner is defined as the first retail purchaser of the vehicle who took delivery of the vehicle on its date of first use. The warranty for the Hybrid Battery will remain in effect throughout the ownership period for the original owner….

173. In the case of the Plaintiffs and other subclass members whose batteries have failed, and as expected for all other subclass members whose batteries are likely to require replacement at some point, HMA has proven to be unwilling or is unable to honor the warranty.

174. The written warranties described herein were part of the basis of the bargain between Plaintiffs and the Maryland subclass on the one hand, and HMA on the other.

175. Pursuant to Md. Comm. Law Code § 14-404, where (as here) the warranty repairs cannot be performed in a timely manner, the company making the warranty is liable for, *inter alia*, replacement of the product rendered defective by that failure, as well as for costs incurred, expenses, and attorneys' fees in the prosecution of an action to enforce the warranty.

WHEREFORE, Plaintiffs seek judgment for themselves and for the Maryland subclass against HMA in an amount in excess of Five Million Dollars, plus their attorneys' fees and costs in this action, plus such other and further relief as this Court may deem appropriate.

**Count VIII – Maryland Consumer Protection Act**

176. Plaintiffs incorporate the previous paragraphs 1-100 as if fully set forth.

177. This Count VIII is brought on behalf of a subclass of consumers from the class defined above, who purchased their Hyundai Sonata Plug-in Hybrid cars from HMA authorized dealers in Maryland.

178. All are "consumers" as that term is used in Md. Comm. Law Code § 13-301, *et seq*.

179. HMA is a merchant who offers or makes available to consumers, directly or indirectly, goods and services, including warranties relating to the goods.

180. When it marketed and sold Hyundai Sonata Plug-in Hybrid cars to Plaintiffs and the Maryland subclass defined herein, HMA made representations about the cars' performance capabilities, and about the warranties, which were not true, including the representation that the battery would be warranted for the life of the car.

181. In making these representations, HMA asserted that the Hyundai Sonata Plug-in Hybrid and the warranty had characteristics, components, uses, benefits, and qualities that they do not have.

182. HMA's representations were false, misleading, and had a tendency to deceive consumers in Maryland, all in violation of Md. Comm. Law Code § 13-301, *et seq*.

WHEREFORE, Plaintiffs seek judgment for themselves and for the Maryland subclass against HMA in an amount in excess of Five Million Dollars, plus their attorneys' fees and costs in this action, plus such other and further relief as this Court may deem appropriate.

**Count IX- Violation of Song-Beverly Consumer Warranty Act**

183. Plaintiffs incorporate the previous paragraphs 1-100 as if fully set forth.

184. This Count IX is brought for breach of express warranties on behalf of a subclass of consumers from the class defined above, who purchased their Hyundai Sonata Plug-in Hybrid cars in California or who, like Ms. Smith, acquired them through local dealers who secured the cars from California dealerships .

185. HMA is the warrantor for Mr. Nordberg's, Ms. Smith's, and Mr. Bozzuto's and Ms. Lyons's Hyundai Sonata Plug-in Hybrid battery and electrical systems, as it is for all members of the California sub-class described herein.

186. Pursuant to the terms of the express battery warranty, HMA undertook an obligation to protect Mr. Nordberg, Ms. Smith, and Mr. Bozzuto and Ms. Lyons, and the California subclass against battery failure for a "lifetime" of ownership as to new car purchasers, and for the car's first 100,000 miles or for 10 years for subsequent purchasers.

187. HMA also represented that the battery would not substantially degrade during the life of the warranty.

188. The Sonata Plug-in Hybrid battery systems has serious defects, however, causing Mr. Nordberg's, Ms. Smith's, and the Bozzuto/Lyons car batteries to fail, necessitating replacement,

within the first 4 years, with less than 40,000 miles on the odometer in the case of Mr. Nordberg and Ms. Smith.

189. Under the California Warranty Act, the Sonata Plug-in Hybrid is a "consumer good." Mr. Nordberg, Ms. Smith, and Mr. Bozzuto and Ms. Lyons, and the California subclass members are "buyers" under the Warranty Act.190. Defendant HMA is a "manufacturer" or a "distributor under the Warranty Act, and both issued the warranty applicable to the battery, and is responsible for the undertakings and agreements set forth therein.

191. Mr. Nordberg's battery failed, Ms. Smith's battery failed, and the Bozzuto/Lyons car battery failed, due to defective design or manufacture, and this failure occurred within the applicable express warranty period.

192. Battery failure in the Hyundai Sonata Plug-n Hybrid substantially impairs the use, value, and safety of the car.

193. Mr. Nordberg delivered the car to a Hyundai dealer for repair, Ms. Smith delivered the car to a dealer in Illinois for repair, and Mr. Bozzuto and Ms. Lyons delivered the car to a California dealer for repair, but in all cases the dealers have held the cars for many months, issuing only vague promises about when or whether the car's batteries may ever be replaced.

194. Failure to make the necessary repairs, and to conform the cars to the terms of the express warranty and the conditions contemplated by that warranty, or to issue a refund or replacement, constitutes a breach by HMA of its obligations under the Warranty Act.

195. Mr. Nordberg, Ms. Smith, and Mr. Bozzuto and Ms. Lyons, together with the California subclass, are entitled to damages, including a refund of all sums paid for the cars, resulting from HMA's failure to comply with its express warranty obligations.

196. HMA's failure is also willful, as it has consistently misrepresented its ability and a schedule for getting repairs accomplished, stringing Mr. Nordberg, Ms. Smith, and MR. Bozzuto and Ms. Lyons and other similarly situated California subclass members along, with no realistic plan to meet its obligations. Willful failure by HMA in this regard entitles Mr. Nordberg, Ms. Smith, Mr. Bozzuto and Ms. Lyons, together with the California subclass to civil penalties of up to two times their actual damages.

WHEREFORE, Plaintiffs seek judgment for themselves and for the California subclass against HMA in an amount in excess of Five Million Dollars, plus their attorneys' fees and costs in this action, plus such other and further relief as this Court may deem appropriate.

**Count X – Violation of the Consumer Legal Remedies Act**

197. Plaintiffs incorporate the previous paragraphs 1-100 as if fully set forth.

198. This Count X is brought on behalf of a subclass of consumers from the class defined above, who purchased their Hyundai Sonata Plug-in Hybrid cars in California or who, like Ms. Smith, acquired them through local dealers who secured the cars from California dealerships .

199. Plaintiffs Nordberg, Smith, and Bozzuto and Lyons, together with all California purchasers of Hyundai Sonata Plug-in Hybrid cars are "consumers" as defined by Cal. Civ. Code section 1761(d). Defendant HMA is a "person" under Cal. Civ. Code section 1761(c).

200. The California Legal Remedies Act ("CLRA") prohibits unfair or deceptive acts or practices by any person in a transaction which results in the sale or lease of consumer goods or services.

201. HMA has engaged in deceptive acts and practices as described above herein with respect to the its Sonata Plug-in Hybrid model, and the issuance of the lifetime battery warranty, and the 10-year, 100,000 mile battery warranty for subsequent purchasers of the car.

202. HMA has represented that the car's battery, the battery's useful life, and the warranty protections applicable to the battery have qualities, and meet a standard, that the battery and the warranty do not meet.

203. HMA has exacerbated the misleading acts and practices by accepting vehicles for battery repairs, and holding onto them for indefinite periods of time, promising repairs that cannot and will not be made.

204. Members of the California subclass described herein had no way of discovering, when they purchased their Sonata Plug-in Hybrids, that HMA's representations about the car and the battery warranty were false. Problems with the batteries and HMA's inability or unwillingness to honor the warranty manifested themselves well within the warranty period, but a couple of years and thousands of driving miles later.

205. The Electric Vehicle (EV) program initiated by Hyundai with the advent of the Sonata Plug-in Hybrid was limited to eight designated states in the U.S. It was essentially an experimental program, and it has failed, leaving class members who were deceived by HMA's representation and warranties, with cars that are inoperable or unmarketable.

206. HMA intentionally made representations about the battery life and the attendant warranty that were false, selling vehicles to thousands of consumers without intending to ensure it was capable of honoring the express warranty it made regarding the battery.

207. HMA's marketing efforts for the experimental EV program, and its false promises were likely to, and did, deceive thousands of consumers.

208. As a direct and proximate result of HMA's violations of the CLRA, Mr. Nordberg, Ms. Smith, and Mr. Bozzuto and Ms. Lyons, together with the California sub-class have suffered, and continue to suffer, injury-in-fact, actual damages, and ascertainable loss. Had the truth about the

experimental EV program and the warranty been disclosed, they would not have purchased or leased the Hyundai Sonata Plug-in Hybrid.

209. Under Cal. Civ. Code section 1780(a), Mr. Nordberg, Ms. Smith, and Mr. Bozzuto and Ms. Lyons, together with the California subclass, seek monetary relief against HMA for the economic harm caused by the misrepresentations described herein, and up to $5,000 in civil penalties for those California subclass members (under section 1780(b)) who qualifies as "senior citizens."

WHEREFORE, Plaintiffs seek judgment for themselves and for the California subclass against HMA in an amount in excess of Five Million Dollars, plus their attorneys' fees and costs in this action, plus such other and further relief as this Court may deem appropriate.

**Count XI – Violations of California False Advertising Law**

210. Plaintiffs incorporate the previous paragraphs 1-100 as if fully set forth.

211. This Count XI is brought individually by the named Plaintiffs, and on behalf of all consumers in the Class defined above.

212. Cal. Bus. & Prof. Code section 17500 makes it unlawful for any business entity, including HMA, "with intent, directly or indirectly to dispose of … personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from [California] before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

213. HMA violated the statute in disseminating information it knew to be untrue with respect to the Sonata Plug-in Hybrid battery warranty in that HMA or should have known that it was not

in a position to honor a lifetime or a 10-year/100,000 warranty for the car's battery when it published that warranty and advertised its protections to prospective buyers.

214. HMA's representations regarding the warranty, and the prospective functional life of the battery were material and likely to deceive reasonable consumers.

215. Plaintiffs and the other Class members suffered injury in fact, including loss of money and property, as a result of HMA's unfair, unlawful, and deceptive practices.

All of the representations concerning the warranty and the functional life of the Sonata Plug-in Hybrid battery were made by HMA as part of its usual course of business from its headquarters in California.

WHEREFORE, Plaintiffs seek judgment for themselves and for the Class members against HMA in an amount in excess of Five Million Dollars, plus their attorneys' fees and costs in this action, plus such other and further relief as this Court may deem appropriate.

**Count XII – Negligent Misrepresentation**

216. Plaintiffs incorporate the previous paragraphs 1-100 as if fully set forth.

217. This Count XII is brought on behalf of a subclass of persons who are "subsequent purchasers" of Hyundai Sonata Plug-in Hybrid cars.

218. HMA made representations to Mr. Nordberg and other subsequent purchasers of Sonata Plug-in Hybrid cars that they would be protected by a battery warranty that was effective for the car's first 10 years or 100,000 miles.

219. HMA knew or should have known that the warranty representation was false. HMA had no reasonable basis to believe that it would be able to honor that warranty as to this experimental line of cars that it was selling in only eight states, and for a limited period of time.

HMA made the representations as part of a plan that would induce consumers to purchase the cars, including secondary purchasers, and as a means of insuring that the cars retained value on a secondary market.

220. Mr. Nordberg and other subsequent purchasers could not reasonably have discovered that HMA could not or would not be able to honor the battery warranty, and they purchased Sonata Plug-in Hybrids in a secondary market in reasonable reliance on the warranty.

221. As a result of their reasonable reliance on the warranty and HMA's representations regarding the warranty, Mr. Nordberg and the subclass of subsequent purchasers have suffered injury in fact, including loss of money and property.

WHEREFORE, Plaintiff Nordberg seeks judgment for himself and for the subclass of subsequent purchasers of the Hyundai Sonata Plug-in Hybrid car, against HMA in an amount in excess of Five Million Dollars, plus such other and further relief as this Court may deem appropriate.

**Count XIII -Oregon Unlawful Trade Practices Act – Or. Rev. Stat. §§ 646.605, et seq.**

222. Plaintiffs incorporate the previous paragraphs 1-100 as if fully set forth.

223. This Count XIII is brought on behalf of a subclass of consumers from the class defined above, who purchased their Hyundai Sonata Plug-in Hybrid cars in Oregon.224. HMA willfully violated the Oregon Unlawful Trade Practices Act when it sold Sonata Plug-in Hybrid cars to Mr. Pritchett and to all member of the Oregon subclass.

225. HMA has failed to perform repairs and battery replacement in its Sonata Plug-in Hybrids, despite the fact that batteries have failed, cars are inoperable, and HMA promised a "lifetime" battery warranty to purchasers of new Sonata Plug-in Hybrid cars.

226. HMA represented that its cars had a battery life or capacity that the batteries did not have.

227. HMA falsely represented that its warranty on the battery was good for the "lifetime" of the car's ownership by original purchasers, and was good for 100,000 miles or 10 years for subsequent purchasers.

228. HMA's promises regarding its warranty protection necessarily implied that warranty repairs would be made within a reasonable time frame, even though HMA knew that it did not have the capacity to make such repairs.

229. As a direct result of HMA's false promises, Mr. Pritchett and the Oregon subclass have suffered injury in fact, including loss of money and property.

WHEREFORE, Plaintiff Pritchett seeks judgment for himself and and for the Oregon subclass against HMA in an amount in excess of Five Million Dollars, plus their attorneys' fees and costs in this action, plus such other and further relief as this Court may deem appropriate.

**Count XIV – Connecticut Unfair Trade Practices Act – Conn. Gen. Stat. § 42-110(b)**

230. Plaintiffs incorporate the previous paragraphs 1-100 as if fully set forth.

231. This Count XIV is brought on behalf of a subclass of consumers from the class defined above, who purchased their Hyundai Sonata Plug-in Hybrid cars in Connecticut.

232. HMA is in the business of selling and marketing automobiles in the State of Connecticut, and is therefore bound by Conn. Gen. Stat. § 42-110(b) which prohibits engaging in unfair or deceptive acts in the conduct of any commerce or trade.

233. HMA violated Conn. Gen. Stat. § 42-110 in selling Sonata Plug-in Hybrid cars in Connecticut through its authorized dealer under terms that included an express warranty for "lifetime" battery replacement.

234. At the time HMA sold the car to Mr. Tzamouranis, and to other Connecticut residents, HMA knew or should have known that it did not have the ability to honor that warranty.

235. Accordingly, HMA has failed to repair Mr. Tzamouranis's car and other cars in the State of Connecticut in compliance with the warranty.

236. This failure, and the inability of HMA to comply with warranty terms, renders the Plaintiff's car, and cars belonging to members of the Connecticut subclass, undriveable, and reduces their value to near zero.

WHEREFORE, Plaintiff Tzamouranis seeks judgment for himself and and for the Connecticut subclass against HMA in an amount in excess of Five Million Dollars, plus their attorneys' fees and costs in this action, plus such other and further relief as this Court may deem appropriate.

Dated: April 20, 2023

Respectfully submitted,

/S/
Thomas J. Minton – No. 03370
Goldman & Minton, P.C.
3600 Clipper Mill Rd., Suite 201
Baltimore, MD 21211
(Ph) 410-783-7575
(Fax) 410-783-1711
tminton@charmcitylegal.com

/S/
David E. Tompkins – No. 18159
836 Bonifant Street
Silver Spring, MD 20910
(Ph) 202-296-0666
(Fax) 202-371-9228
dtompkins@lewisandtompkins.com

*Attorneys for the Plaintiff and the Putative Class*

## JURY DEMAND

Plaintiffs demand a jury on all issues so triable.

Respectfully submitted,

/S/

Thomas J. Minton – No. 03370
Goldman & Minton, P.C.
3600 Clipper Mill Rd., Suite 201
Baltimore, MD 21211
(Ph) 410-783-7575
(Fax) 410-783-1711
tminton@charmcitylegal.com

/S/

David E. Tompkins – No. 18159
836 Bonifant Street
Silver Spring, MD 20910
(Ph) 202-296-0666
(Fax) 202-371-9228
dtompkins@lewisandtompkins.com

*Attorneys for the Plaintiff and the Putative Class*

## Certificate of Service

I hereby certify that on this 20th day of April, 2023, I filed the foregoing Second Amended Class Action Complaint through the Court's ECF system, and that all counsel of record will be served electronically through that system.

/S/

Thomas J. Minton – No. 03370
Goldman & Minton, P.C.
3600 Clipper Mill Rd., Suite 201
Baltimore, MD 21211
(Ph) 410-783-7575
(Fax) 410-783-1711
tminton@charmcitylegal.com